# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAUL RIVERA, | : | CIVIL NO. 1:12-CV- 1169 |
| Petitioner, | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et al., | : | |
| Respondents, | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

The petitioner in this case, Raul Rivera, is a convicted murderer who was recommitted for a parole violation in 2010 following an incident in which he was convicted of lying to police. Rivera , who is proceeding *pro se*, has filed a petition for writ of habeas corpus which contends that the parole board's decision to extend his parole release date beyond the original maximum term of his sentence violates his constitutional rights. That parole board action, which Rivera attacks in this petition, is specifically authorized by state law, which expressly provides that parolees who violate the terms of their parole forfeit credit for the time served on parole as a penalty for their wrongdoing.

1

For the reasons set forth below, it is recommended that this petition be denied, since Rivera is not entitled to use a writ of habeas corpus to compel state parole officials to deviate from the parole outcome mandated by state law, and by his own repeated misconduct.

## II. Statement of Facts and of the Case

The pertinent facts in this case can be simply stated: Raul Rivera is a convicted murderer. On August 4, 1997, the Court of Common Pleas of Philadelphia County sentenced Rivera to an aggregate term of 7 ½ to 15 years for third degree murder and possessing instrument of Crime-Weapon. (Doc. 10, ¶1.)The original minimum and maximum release dates for Rivera on this murder and weapons conviction were January 9, 2005 and July 9, 2012, respectively. (Id., ¶3.) Rivera was then paroled from this homicide conviction on April 9, 2007. (Id., ¶4.) As a condition of his parole, Rivera acknowledged that if he was convicted of a new crime while on parole, the Board had authority, after an appropriate hearing, to recommit him to serve the balance of the sentence which he was serving with no credit for time at liberty on parole. (Id., ¶5.)

Less than two years later, on February 2, 2009, police arrested Rivera on new criminal charges in Montgomery County, Pennsylvania. (Id., ¶6.) Rivera was held on these charges, and the Parole Board lodged its detainer against Rivera for parole

2

violations on February 3, 2009.(Id., ¶¶7-9.) On February 8, 2009, Rivera waived his hearing rights and admitted to a technical parole violation, violating condition #1, leaving the district without permission of his parole officer. Based on his admission, the parole board recommitted Rivera as a technical parole violator. (Id.,¶¶10-11.)

On October 15, 2009, Rivera pleaded guilty in the Court of Common Pleas of Montgomery County to the offense of False Identification to Law Enforcement Officer and was sentenced to serve 6 to 12 months in the county prison on this new conviction. (Id., ¶¶ 12-14.) On October 23, 2009, the Court of Common Pleas of Montgomery County paroled Rivera from this sentence and Rivera was returned to a Pennsylvania state correctional institution on November 5, 2009 for service of his technical parole violation sentence on his prior murder conviction. (Id., ¶¶15-16.)

The parole board then conducted a revocation hearing for Rivera relating to his latest conviction on April 2, 2010. Following that hearing, the board recommitted Rivera as a convicted parole violator for the offense of False Identification to Law Enforcement. A copy of this decision was mailed to Rivera on May 4, 2010. In this decision, the parole board also recalculated Rivera's maximum sentence date from July 9, 2012 to January 23, 2015 based on his return to custody as a convicted parole violator. This January 23, 2015 maximum release date calculation reflected that Rivera

forfeited credit for the period he was at liberty on parole from April 9, 2007 (date of parole) to February 2, 2009 (date of arrest on the new criminal charges). The January 23, 2015 maximum release date calculation also reflected that Rivera did not receive any credit on his murder sentence parole violation for the period he was incarcerated on his new criminal charges since Rivera received credit on his new sentence for this period of incarceration. (Id., ¶¶. 17-22.)

The revocation/recalculation decision mailed to Rivera on May 4, 2010, which set forth the January 23, 2015 maximum release date, contained a clause stating, "IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRATIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER." The parole board received an administrative appeal from Rivera challenging this revocation/recalculation decision on May 18, 2010. On August 16, 2010, the board mailed Rivera a response that denied his administrative appeal and affirmed the May 4, 2010 decision. Rivera did not further appeal the May 4, 2010 revocation/recalculation decision to any Pennsylvania court. (Id., ¶¶23-27.)

Since the revocation of his parole, the board has reviewed and denied Rivera for re-parole several times, in 2011 and 2012. On both occasions, Rivera was denied parole due to his prior unsatisfactory parole supervision history and a risk and needs

assessment, and assessment which indicated that Rivera presented a high level of risk to the community. (Id., ¶¶28-30.)

On June 20, 2012, Rivera filed this petition for writ of habeas corpus. (Doc. 1) At bottom, Rivera's petition challenged the parole board's application of state law in this fashion which resulted in the extension of his parole release date beyond the initial term he would have served if he had complied with his parole supervision. (Id.) This matter has been fully briefed by the parties, and is now ripe for disposition.

For the reasons set forth below, it is recommended that the petition be denied.

### III. Discussion

#### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by Title 28, United States Code, Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1). **Substantive Standards Governing Section 2254 Petitions.**

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not

entitle a petitioner to Section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See, Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2). **Procedural Thresholds for Section 2254 Petitions.**

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(2). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See, Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002). A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas relief only by showing either: (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see, Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice". Coleman v. Thompson, 501 U.S. 722, 750 (1991).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to

7

pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

**B.    Rivera's Petition Should Be Denied Both on Exhaustion Grounds and Because Rivera Is Not Entitled to Use a Writ of Habeas Corpus to Compel Favorable Parole Consideration.**

In this case the parole board asserts that there are both procedural and substantive obstacles to habeas corpus relief for Rivera. At the outset, the board argues that Rivera has failed to meet § 2254's exhaustion requirement.

It is well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas relief, Rivera bears the burden of establishing that he has exhausted state remedies, Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). Rivera cannot satisfy this burden and will not be deemed to have exhausted his state remedies as long as he had the right under state law to raise the question presented in his habeas petition. 28 U.S.C. § 2254(c); Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir.2002).

In this case Rivera is a criminal recidivist and parole violator who was recommitted as a parole violator following a criminal conviction, and has now received at least three parole hearings in 2010, 2011 and 2012. Rivera could have challenged

any of these decisions, both through the board's administrative review process, see 37 Pa.C.S. § 73.1, and by filing by a timely appeal to Commonwealth Court. See Bronson v. Pennsylvania Board of Probation and Parole, 491 Pa. 549, 421 A.2d 1021 (1980) (revocation), McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983) (recalculation). However, aside from single request for an administrative review of one of these actions in 2010, it appears that Rivera never pursued any of his available state remedies to challenge these various state parole decisions. That failure to pursue available state remedies is now fatal to this petition. Since Rivera has failed to fully exhaust his state remedies, his petition should be denied. Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. See, e.g., Warwick v. Miner, 257 F. App'x 475 (3d Cir.2007); Williams v. Winder, 232 F. App'x 177 (3d Cir.2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir.2001).

Moreover, when we consider the merits of these claims we find that this petition fails because Rivera has not identified state conduct in this case which violates "the Constitution or laws or treaties of the United States" and led to a fundamental defect which inherently resulted in a complete miscarriage of justice in a fashion which was completely inconsistent with rudimentary demands of fair procedure. Fairly construed,

Rivera's petition simply challenges the fashion in which the parole board revoked, recalculated and extended his term of incarceration following his parole violation which involved new criminal conduct.

State inmates like Rivera frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on due process grounds. Yet these invitations are rarely embraced by the courts. Thus, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal &

Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993).Therefore, Rivera may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Thus, it is "clear that the federal courts, on habeas review, are not to 'second-guess parole boards,' and the requirements of substantive due process are met if there is some basis for the challenged decision. Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir.2001)." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002). Rather, in this setting, [t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.' " Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).

Recognizing this fact, in this case Rivera's petition attacks another aspect of the parole process: the fact that, under certain circumstances, state law calls for the forfeiture of time spent on parole by criminal recidivists like the petitioner who violate their parole supervision. See 61 Pa. C.S. §§ 6138(a)(2) and (c)(2). Thus, at bottom,

Rivera's petition launches a constitutional challenge to the entire structure of Pennsylvania's parole statute. The difficulty with this claim is that it is well-established that this aspect of Pennsylvania's parole statute is constitutional. See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for the past twenty-five years federal courts have expressly considered the provision of state law challenged by Rivera, which permits the recalculation and extension of parole release dates for recidivists who violate the terms of their release, and have held that "[n]o [federal] constitutional question is involved in the Parole Board's failure to give relator credit for time on parole and its adjustment of the expiration date of his new maximum." See United States ex rel. Heacock v. Myers, 367 F.2d 583 (3d Cir.1966) (expressing "complete accord" and affirming opinion of district court in United States ex rel. Heacock v. Myers, 251 F.Supp. 773, 774 (E.D.Pa.1966)). As this court observed more than twenty years ago when it disposed of a similar inmate complaint:

> Petitioner contends that in taking away his "street time" the Board unlawfully extended his maximum sentence in violation of his rights under the Fifth and Fourteenth Amendments. [The Pennsylvania State parole statute], directing the Pennsylvania Board of Parole to give a recommitted, convicted parole violator no credit for time spent on liberty while on parole, has withstood numerous constitutional challenges in the federal courts. [This statute] has been held not to violate the due process and equal protection guarantees of the federal constitution, and not to violate the constitutional prohibitions against double jeopardy, bills of

> attainder, cruel and unusual punishment or ex post facto laws. See also, United States ex rel. Heacock v. Myers, 251 F.Supp. 773 (E.D.Pa.1966), aff'd per curiam, 367 F.2d 583 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967); United States ex rel. Brown v. Pennsylvania Board of Parole, 309 F.Supp. 886 (E.D.Pa.1970); Gomori v. Maroney, 196 F.Supp. 190 (W.D.Pa.1961), aff'd, 300 F.2d 755 (3d Cir. 1962). In view of the foregoing authorities, the Court finds petitioner's contention without merit.

Choice v. Pennsylvania Bd. of Parole ,448 F.Supp. 294, 298 (M.D.Pa.,1977)(footnotes and citations omitted).

These observations remain as pertinent and compelling today as they were in 1977, and continue to rebut any habeas challenge to the parole board's compliance with state law, which refuses to reward parole violators with credit for time spent on parole. Moreover, in this case the parole board persuasively demonstrates that the calculation of this forfeited parole time was careful, accurate and wholly in accord with state law. Therefore we find no error in this parole expiration date recalculation.

In short, the extension of Rivera's parole date does not constitute a violation of a fundamental constitutional right owed to the petitioner. Rather, this action represents a straightforward application of a constitutionally valid state law to the repeated misdeeds of a felon, and recidivist. In the Court's view, rather than reflecting arbitrary action, this parole board judgment appears to represent a careful, informed balancing of the interests of both the inmate and society. It was, therefore, the very essence of informed, discretionary decision-making which is the duty and

responsibility of the parole board. Since nothing in this parole board decision offends the constitution or laws of the United States, this petition for writ of habeas corpus should be denied.

## IV. **<u>Recommendation</u>**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

<i>S/Martin C. Carlson</i>
Martin C. Carlson
United States Magistrate Judge

Dated: October 11, 2013